Walter A. Taylor, a refrigeration engineer, is attempting to recover from the liquidators of Panama Ice Company $868.44 as the balance alleged by him to be due for professional services rendered under contract to increase the efficiency and production of the ice manufacturing plant of the said company, and for certain amounts expended by him for machinery, parts and materials. He avers that he was employed during December, 1939, under a verbal contract made with Mr. Joseph J. DiCarlo, who was then President of the company, and that under that contract he was to be repaid such amounts as it might be necessary for him to spend, and that he was to receive a fee of $15 per ton for each ton by which the capacity of the plant might be increased up to 65 tons, and an additional fee or bonus of $5 per ton for each ton above 65 tons by which the capacity should be increased. He alleges that he increased the capacity by 75 tons, and that therefore he is entitled to $1,175, in addition to $169.44 which he expended, or a total of $1,344.44, and that since he has been paid only $476, he is entitled to the balance sued for.
The defendant company, now in liquidation, admits that Mr. Taylor was employed and that for a period of approximately twelve months he rendered services, intermittently, in connection with the installation of machinery and the replanning of the plant, but it maintains that there was no contract to pay for his services on any stipulated basis since he well knew that the company, though not at that time in liquidation, was in a bad financial condition, and could not pay for his services on what otherwise might have been a reasonable basis. It maintains that the understanding was that he was to be paid only what the company could afford; as Mr. DiCarlo expressed it "whatever we could afford out of the cash available as we went along."
It is also contended by defendant that Mr. Taylor was paid out of the available cash as the work progressed the amounts already set forth, and that therefore nothing more is due him, and that, as a matter of fact, the capacity of the plant was not increased to the extent claimed by him.
The record shows that the plaintiff is unquestionably an expert in his profession of designing, constructing and reconstructing ice plants; that he had been professionally employed by other manufacturers to do work similar to that required by the Panama Ice Company, and that the fee considered proper for such work was approximately the amount claimed per ton by plaintiff. Whether the increase claimed by plaintiff was obtained is left somewhat in doubt because, while the plant, since the work was done, has never produced the tonnage of which Mr. Taylor says his work *Page 213 
made it capable, he explains that that is due to the fact that the company at no time had sufficient funds to buy the materials which would have been necessary to produce that quantity of ice.
The record shows that during the progress of the work plaintiff had full charge of everything that was done in connection with the replanning and reconstruction. The electrical contractors, the carpenter and others employed testified that they understood that he was in complete charge; that they looked to him for instructions and that the specifications came from him.
The record shows that the Board of Directors of the company did not pass upon a contract such as that Mr. Taylor claims the company made with him.
The record makes it rather clear that Mr. Taylor was very well along in years, and was not so busily engaged in his profession at that time as he had been previously, and probably could afford to spend more time, intermittently, on that job than he could have spent had other professional jobs occupied more of his time.
Another important fact is that Mr. Taylor knew that the company was in bad financial condition; that its affairs had become very much involved and yet the record shows that when a creditors' committee was appointed, he did not present his claim as he seems to have been urged to do. In fact, he did not make claim for more than two years after the agreement had been entered into and until about a year after the completion of the work. His explanation is that he considered that he was a preferred creditor; that he had a superintendent's lien and that by filing a claim or "going in" as he expressed it, he might prejudice this lien.
The record further shows that he carefully kept a diary of all that he did in connection with this work, and that while in the very beginning it appears that he thought he had a contract on the basis now contended for, there is nothing later which shows that the contract was based on the terms set forth in his petition.
Under these facts, the court a quo dismissed the suit, giving as written reasons the following: "Plaintiff must make his case reasonably certain. This in the opinion of this court he did not do."
We consider this case, which involves only a question of fact, one of the most difficult with which we have ever come into contact. We have no doubt that under ordinary circumstances the compensation due plaintiff would be substantially greater than what he has received; in fact, this is practically conceded. It is evident, however, that he did not devote his full time to this one job during the whole twelve or thirteen months within which the work was going on. There were periods in which practically nothing was done. Under the circumstances we reach the conclusion that we should not disturb the finding of our brother below. He saw and heard all of the witnesses, except Mr. DiCarlo, as the case was developed, and was in a better position than are we to reach a conclusion on these questions of fact. The well-established rule must again be followed. There is no manifest error.
The judgment is affirmed.
Affirmed.